315-651, The Estate of Justice Albrecht, Appellee, Cross Appellant, by Jeremy Heifel, v. Cheryl Winter, Appellant, Cross Appellate, by James Lawson. Mr. Lawson, good afternoon. Good afternoon, Judge. While you're making your way up here, let me tell you that Justice Holdredge is the third member of this panel. He's not able to be here today, but he will be listening to the tapes and participating in the discussion in the arrival of the decision. Thank you, Your Honor. May I proceed? Yes, please. May it please the Court and Counsel. Prior to delving into my argument, I would like to just take a brief moment to recite a few facts to place my argument in context. My client, Cheryl Winter, was married to Douglas Albrecht for 29 years, and they divorced in the year 2004. Prior to that divorce in 2004, Douglas Albrecht had worked at Caterpillar for a vast majority of the marriage, and he had retired in 2003, a year prior to his divorce from Cheryl Winter. At the time that he retired, prior to the divorce, he established a surviving spouse annuity in the sole name of and for the sole benefit of Cheryl Winter again at the time of his retirement. He had also designated Cheryl Winter as the sole beneficiary of the policy of life insurance through MetLife. At the time of their divorce, the judgment of dissolution of marriage, which was done by agreement, made no reference whatsoever to the surviving spouse annuity through Caterpillar, and there was also no reference to the MetLife policy of insurance. The judgment of dissolution of marriage did award the monthly pension benefits being paid to Douglas Albrecht since he was in pay status at the time of the divorce to Douglas Albrecht, and it also awarded any life insurance policies on his own life to Douglas Albrecht, but there was no reference to any beneficial interest under any life insurance policy. Mr. Albrecht remarried in 2006 and passed away in 2011. After Mr. Albrecht passed away, his surviving spouse brought an action against Cheryl Winter in an effort to obtain the rights to the surviving spouse annuity, which is in the amount of $678 a month for the rest of Cheryl Winter's life, and also sought to recover the life insurance benefits that had been paid by MetLife to Cheryl Winter. So there's the fact pattern, and I would like to delve into the insurance proceed issue first. One of the most important things that I believe the Court should focus on is the general concept in the law that a divorce does not extinguish property rights of a spouse that exist independent of the marriage. In this case, the rights that exist independent of the marriage is the policy of life insurance and the proceeds derived from that. In essence, there are two contracts at issue. One is the settlement agreement that is incorporated into the judgment of dissolution of marriage, and the second contract is the MetLife policy of life insurance. Two equal contracts on equal footing, and the law says that each contract is equally enforceable and one cannot be ignored in favor of the other, hence the conflict when it comes to a judgment of dissolution of marriage where an ex-spouse is not removed as a beneficiary of life insurance. The law has dealt with that very specifically and in several cases, and it has evolved into a two-part test that establishes a balance between contract rights independent of the marriage and a judgment of dissolution of marriage. The test is a two-part test, and this Court has stated it as succinctly or more succinctly than many other Courts in this Court's 1998 case of In re Marriage of Ballas-Webbs. And I'll just quote directly from that case. To determine the effect of a waiver, in this case, waiver of the right to life insurance benefits, two factors must be considered. One, whether the asset in dispute was specifically listed as a marital asset and awarded to a spouse, and two, whether the waiver provision contained in the settlement agreement specifically states that the parties are waiving any expectancy or beneficial interest in that asset. Respectfully stated, that poses an insurmountable challenge for the estate of Douglas Albrecht in its effort to obtain the insurance proceeds. The MetLife policy of insurance was not listed in any respect in the policy of insurance, in the judgment of dissolution of marriage. There was only a general reference to life insurance policies. So the asset, the MetLife policy, was not specifically listed in that as beyond dispute. So the first prong of the two-part test is not satisfied. The second prong of the test, whether or not the beneficial or expectancy interest was specifically waived, that is also not satisfied by the estate of Douglas Albrecht in any respect. There is only general boilerplate language that is at the end of most divorce decrees where each party waived the rights in the property of the other hereafter acquired. There is absolutely no reference to a future beneficial or expectancy interest in any asset in the judgment of dissolution of marriage. In apparent recognition that that two-part test is not satisfying either prong of the two, the estate of Douglas Albrecht seems to restate that rule and state that as long as there is a general reference to an asset class or an asset type, that that's sufficient as opposed to a specific reference to an asset. And as long as there's that general reference followed by boilerplate language of waiver, then that should be sufficient. Well, that is not the test, and that is not the law. There is simply no case in Illinois that says that. Whereas many cases that are cited throughout the brief, including this court, is there's the well-established two-prong test that balances the two competing contracts, the life insurance and the judgment of dissolution of marriage. The trial court, with all due respect, simply did not apply that two-part test. The trial court focused on one word in the judgment of dissolution of marriage, and that is the word any. In paragraph Q of the judgment of dissolution of marriage, it is true that Douglas Albrecht was awarded any life insurance policies on his own life, free and clear of any interest or claim of Cheryl Winter. The only thing that that refers to is what's called the ownership interest in the life insurance policy itself. Douglas Albrecht owned the policy. He was awarded it. He could have removed Cheryl Winter's name as a beneficiary at any point in time, and she would have had no qualms about that whatsoever, but he never did that. The other interest, in contrast to the ownership interest, is the beneficial or expectancy interest, and that's what this case is all about insofar as the insurance proceeds is concerned, and there was no waiver of that, there's no reference in the judgment, and the test is very, very specific. So again, with all due respect to the trial court, it just did not apply the test correctly and it focused on one word in contrast to applying the actual test. I would also ask that the court, when rendering its decision in this case, take a careful look at its own opinion in Bella Suez because it is a very applicable opinion. In that particular case, there were three different policies of insurance, and the judgment of dissolution of marriage contained waiver language that specified expectancy or contingent interest, which is in direct contrast to the instant case where there is no such waiver. What the court said is that there were two policies that were actually identified in the judgment, one policy that was not. Even though there was that general reference to insurance because two policies were listed, the court said, with respect to the two policies that were listed, then the estate should win because there was very specific language waiving expectancy interest. But with respect to the one policy that was not specifically listed, the beneficiary prevails and the insurance contract should be enforced. When you compare that to this case, there was no specific policy listed at all. MetLife policy does not appear in the judgment, and there is no waiver language whatsoever of expectancy interest. So with respect to the test itself, I would respectfully submit that the trial court should be reversed. I also did want to draw the court's attention to one argument that is an alternative argument that I believe was raised for the first time on appeal by the estate, and quite frankly, I wish I would have thought of it at the trial level because in an ironic way, it actually supports Cheryl Winter's position, but in an alternative way. The estate argues that in the general boilerplate language at the end of the judgment, where there is a waiver of the rights in the property of the other hereafter acquired, that that phrase hereafter acquired should be construed to include expectancy or beneficial interest. Well, that's not what that language means. The common sense interpretation of that is property hereafter acquired. If one ex-spouse goes out the day after a divorce and buys a house, the other ex-spouse obviously doesn't have a claim against that new house. That's property acquired after divorce. When that is applied to the instant case, the law is very clear with respect to life insurance proceeds. The beneficiary of a policy of life insurance has no contractual right to those proceeds until the insurer under that policy dies. Douglas Albrecht did not die until 2011, and Cheryl Albrecht, I assume Cheryl Winter, did not have any right to those insurance proceeds until 2011 after he passed away. That would be property hereafter acquired, because Cheryl Winter had no interest in that policy until Douglas Albrecht passed away. So that's an alternative argument, one that I wish I would have thought of at the trial level, but I think it is equally applicable to the standard two-part test that must be applied by both the trial court and this court. So different alternative bases. I think there is an argument in both sections, whether it's with respect to the insurance or the surviving spouse annuity, that there was a pattern of equal division, and that should somehow impact this court's decision. That should have no application to the analysis of the insurance issue, because Douglas Albrecht was free to cancel or change the beneficiary at any point in time after his death. So that argument has no merit. Turning to the surviving spouse annuity, the analysis is actually even simpler than the analysis of the insurance issue, and the trial court did render a correct decision with respect to the surviving spouse annuity. The crux of the argument with respect to the surviving spouse annuity is that it existed as a separate and distinct marital asset in the sole name of Cheryl Winter before the divorce, at the time of the divorce, and after. I've referred the court in the briefs to the in-rate marriage of Moore and in-rate marriage of Sawicki that specifically state that surviving spouse annuities are separate and distinct from pension interests, and they exist as an identifiable asset subject to distinct valuation in a divorce. And again, I remind the court that Douglas Albrecht is the one that actually set this surviving spouse annuity up prior to the divorce between the parties. The trial court noted that it was a separate marital asset. We're not dealing with an expectancy interest or a beneficial interest. It was a separate asset in the name of Cheryl Winter at the time of the divorce. The surviving spouse annuity is not referenced in any way, shape, or form in the judgment of dissolution of marriage, and Douglas Albrecht waived his right. Therefore, the estate waived its right to any interest in the surviving spouse annuity. Counsel, you have two minutes. Thank you. Just for my clarification, just so I'm clear, at the time that Douglas retired, he elected to receive a reduced pension annuity benefit and set aside that amount as a survivor. Had he not elected to have a surviving spouse annuity, he would have received a larger amount for his own retirement. Is that correct? I think that's a fair assumption. I don't think that there's anything in the record that actually is directly dispositive of your question, Your Honor, but that is my experience with Caterpillar pensions and surviving spouse annuities. I think it's a fair assumption. If what is crossing your mind is should there have been an offset. No, I just said something that I just wanted to make sure that the parties would have been aware of or would have known at the time of the divorce because it doesn't mention anything about her receiving that. There was a separate form that was part of the court record where Douglas Albrecht actually established that surviving spouse annuity and listed his then spouse, now Cheryl Winter, as the recipient of that surviving spouse annuity. It is my understanding that that would have resulted in a reduction in the monthly benefits being paid to Douglas Albrecht. It is my assumption, and I probably only have less than a minute here, that you will hear arguments about the parties would have used a quadro if they anticipated Cheryl Winter to receive this surviving spouse annuity. A quadro is only used to divide a pension. This was not dividing a pension. This was a separate asset in the sole name of Cheryl Winter even before the divorce. No quadro was necessary to divide that. It already existed in the sole name of Cheryl Winter, and that has been consistent throughout time. Any reference to a quadro is irrelevant. There was also a reference in the arguments that surviving spouse annuity was not within the contemplation of the parties at the time of divorce. I would respectfully submit that that's a very significant admission by the estate, is that if the parties did not think about it at the time of divorce, it's an asset in the sole name of Cheryl Winter 14 years down the road, or excuse me, 10 years down the road. You just can't go back to a final judgment of dissolution of marriage and redo it, especially when one of those parties is deceased. So the surviving spouse annuity is a separate asset in the name of Cheryl Winter, and the trial court properly awarded that to her. Any other questions? Thank you, Your Honor. Thank you. Mr. Heupel, good afternoon. Good afternoon. Just for clarification, I'm John Heupel. I believe my brother Jeremy is the one who signed the form that was sent in, but I'm the one who's here today to argue. And I represent the appellee and cross-appellant who is Wendy Albrecht, the administrator of the estate of Douglas Albrecht, deceased. And as Mr. Lawson noted, at issue is the interpretation of the terms of a settlement agreement that was part of the divorce judgment, and particularly with respect to term life insurance benefits and a survivor's pension. I would point out also that one fact that's important, Mr. Albrecht, apparently he made these elections when he retired in 2003, and then in 2004 Cheryl Albrecht petitioned for a divorce. And the divorce trial is very short. It all took place in less than a week, so there weren't any contested matters in the divorce. And Douglas Albrecht was not represented by an attorney in the divorce, which I think is of some significance. And Cheryl's attorney drafted the documents. And so the parties reached an agreement, and then the settlement provisions were made part of the judgment that was then entered. And from the document as a whole, it appears, because that's all we have to show the intent of the parties, that the parties intended to divide certain items of property and then to allocate other items exclusively to one spouse or the other, to take care of this as a simple divorce and then to each go their separate ways without having any further interest in the property of the other spouse. That's what appears to be the intent from the common scheme or plan of the provisions that are in the settlement agreement that are part of the judgment. For instance, they kept their own IRA account, bank account, yet they divided another bank account and an investment account. And Cheryl kept a 401k account. The paragraphs that are at issue are paragraphs Q and M and Y. And paragraph Q addresses the life insurance issue. It says that Douglas Albrecht would have his own life insurance policies free of any claims to the plaintiff. And paragraph M states that Douglas Albrecht would have as his own free and clear of any claims to the plaintiff his Caterpillar pension plan that purposes the actual plan. And I would call this Court's attention in particular to three certain cases, unfortunate or constructive on the issues that we've raised. As Mr. Lawson noted, this Court's Velasquez opinion from, I believe, 1998, and the Principal Mutual Insurance case and the Robeson case. We've cited many cases in our brief indicate that a general waiver provision by itself is not sufficient to waive a property item. And that's pretty clear. But from looking at the Velasquez case and the Principal Mutual and the Robeson case, the distillation of those three cases is that for a waiver to be adequate, there either needs to be waiver language in the same paragraph as the asset class that's mentioned or the asset or particular property item needs to be listed in the agreement and then followed by a general waiver provision. In the Velasquez case, there was the land trust with the beneficial interest, and there were also life insurance policies. On the life insurance, what's different there as opposed to the Principal Mutual case, which involved a waiver of any interest in the insurance policies of the other spouse without reference to the actual policy. In Velasquez, and I think there was another case of Allen, where it references only particular policies and omits certain policies, then the waiver language can only apply to listed policies and not to omitted policies. But where there's just a reference to, as in the Principal Mutual case, waiver of any interest in any policies of insurance of the other party, then that would cover any policies without a requirement that the policy be specifically named or listed by number or type of policy. There isn't any issue, is there? There isn't any issue that your client, sorry, Mr. Albrecht, retained the ownership of the insurance policy. That's right. That's not a question here. No, no. And there's no question that he did not notify Caterpillar, which goes back to the Federal Court of Kennedy's decision in 2009, which held that the Supreme Court held that the plan administrator can't look at anything outside its own documents in paying benefits, so you can't have a claim against the plan administrator. So there's no question he failed to notify Caterpillar, not only of the divorce but of his subsequent marriage or any cancellation or change of the beneficiary that they had in their records. And he also failed to change the beneficiary on the insurance policy. That's right. He did nothing as far as informing Caterpillar of any changes that he wanted. So if he was the sole owner and he didn't make those changes, how can we assume that he intended to? From the language of the terms of the dissolution document, the waiver language. So what the Kennedy case and there's a federal case and a state appellate case in Texas which have followed the Kennedy decision that allows an action by them against the recipient if the recipient has breached the terms of the waiver provisions of the divorce settlement or decree. So that's our contention is that in paragraph Q, that he must receive his own life insurance policies of any claims, the plaintiff, that would have included. She didn't waive any right to file a claim for the benefits, which she did promptly after he died. I would also distinguish in the Smithburg case, and as Mr. Lawson pointed out, her right to the benefits was contingent. In other words, it wasn't vested at the time of the divorce. There's a Smithburg case that decided that a pension right was vested because in the divorce decree the party had stated that he would not name any other party as the beneficiary of his policy or his benefits, and so he couldn't change it. But here that didn't take place, so he could have changed at any time, but he didn't, so as far as Capito is concerned, they could only pay out according to their records, but there would still be an action against the former spouse for alleged violation of the waiver provisions of the divorce decree. And I think in the last case there was a land trust, and it was found that the mention of the land trust followed by the general waiver provision was adequate to waive an expectancy interest. Now, it's possible they could have included additional language such as but not limited, but following the waiver of any interest such as but not limited to or by way of example or including any beneficial expectancy, contingent, or other future interest, but by using the word any claim, that's pretty clear that it's any claim, and to the extent that there would be some confusion or ambiguity, I think the law comes back to the cases that hold that where one party is not represented and the other party drafts the document, then it has to be strictly construed against the represented party. But doesn't it, I mean, that same language, I mean, it sort of begs for, I mean, it was his right to do exactly what he did, which was leave it for his ex-wife. I mean, it was his. She couldn't force him to do it. She couldn't make him give it to anyone else. She couldn't stop him from changing the beneficiary. But if he wanted to leave it to her, she had no right to tell him that he couldn't. He had the right to do that. Yes, and we don't know why he did or didn't change it. There's no way to know that since he's deceased and he left no record as to what he was thinking. All we have is just the terms of the settlement agreement of the dissolution judgment. So if there was a waiver, which we argue that there is a waiver, then if she were to waive the right either to the life insurance policies and the pension plan, the pension plan would include any benefits that exist under that plan, then she would be breaching the waiver by applying for the benefits after his death. Maybe he thought that 29 years of marriage she deserved the survival benefit. It's possible. We don't know. There's no way to know what he was thinking. And we don't have any indication that if we were to rule in favor of your client that we would not be doing something that he didn't want to do. No, but I think it doesn't matter because the intent of the parties goes back to the actual dissolution document where they expressed their agreement. And they're both bound by that agreement. So in other words, he couldn't, or even his estate, try and make a claim against an asset of Sheryl's that he'd waived as part of that agreement would be barred or be in breach of his waiver of that. The only thing I'm saying is that maybe he knew what he was doing. It's quite possible. In the dissolution agreement as it's set up. Yes, we have no way of knowing. So all we have to look at is just the dissolution document. But if he had changed the beneficiary, then he would not have been in violation of the dissolution document based on the waiver language. And if he had been living and there had been an issue about it, then that would have, like our issue today, it would have been brought before the court for a declared interpretation of the document because that's really what's at issue in this case, question of law, how to interpret this document, the waiver provisions in this document, on the life insurance and pension. And I would just point out with respect to the pension interest, on the process ruling that it was a separate asset of Sheryl, there are numerous cases that say that the survivor benefit of a pension plan is a miracle asset that's subject to allocation or adjustment. And it wasn't vested because he had the right to change that at some point in the future. So it was contingent but not vested, whereas if he had agreed in the dissolution document that he would not change the beneficiary, then it would have been vested at that time. So it was a miracle asset, not a separate asset of Sheryl's, and even if it had been a separate asset of hers, it wasn't, as the trial court noted, it wasn't listed in the document, and so therefore it couldn't be waived if it wasn't listed. So I think the trial court's rulings with respect to the two issues are inconsistent. And I already noted some of the cases that were going to court's attention, and the Suwakie and Moore cases that talk about it being a miracle asset, a survivor pension that's subject to adjustment, absent the parties agreeing, since if they reach an agreement, then they don't have to make the required adjustments. In Suwakie and Moore, it was disputed, so the court had to make the adjustments. But if the parties here or the parties had reached agreement on everything, then they are required to make allocations or adjustments. And also I referenced this court's decision in the Davis case and the Belf case, which indicates that what was in the contemplation of the parties at the time from the language of the agreement, there was a pension plan reference, and there was a claim about the pension plan had a retirement benefit, a disability benefit, but the court held that the retirement benefit was in the contemplation of the parties, but it was not in the contemplation of the parties, but one of the other spouses would have a right to the other spouse's disability benefit under the pension plan. So in summary, we would argue that the two waiver provisions are adequately clear that Cheryl waived any claim to either anything under the pension plan or to any interest in the life insurance policies of Douglas. And there were reciprocal provisions where he waived interest in propaganda as pers, and to the extent there is any ambiguity or craftsmanship, it should be strictly construed against the draft of who was the representative party in which Cheryl was. Thank you. Thank you. I'm a little confused here about this. I know that there's an appeal and a cross-appeal, and I have a note here that says that Mr. Feigl gets another five minutes to respond after you, Mr. Lawson, get your five minutes of rebuttal. Did you make all of the argument that you intend to make, or is there going to be a reply on the issue that you cross-appealed on? I might have just a few. Our issue is a pension issue that our cross-appeal involves. So I might have just a few minutes. It's possible. All right. I just want to try to be clear about this. I had interpreted the rule that I would have five minutes to respond to anything that Mr. Heifel would just argue, and that he would have five minutes to either respond to what I'm going to be talking about in five minutes. I really have no strong preference. I think that typically what happens here is that we have the regular three arguments for the appeal, and then there's also the three arguments for the cross-appeal, but I think they've gotten matched in their arguments here, and that's why I'm asking the question about whether there's the additional time. So as I understand it, you're going to finish up, and then Mr. Heifel you get an additional five minutes to reply. That's all. Right. Okay. We had one yesterday, and that's how it worked. Yeah. Well, it was because the arguments were matched here today that I wasn't quite sure whether we still needed another one. So I'm sorry, Mr. Lawson. Go ahead. It was consistent with my assumptions. Very briefly on the insurance issue with respect to the two-part test announced by this court in Valesquez, it's a very specific test. There was an additional reference in this argument to a, from my perspective, a dramatically different type of test about a general reference followed by boilerplate. I've not seen that in case law. I just don't think that that test exists. I think it's very well established that the test in Valesquez is the test that has to be applied with respect to whether or not there's a waiver of the life insurance benefits, and that test was not applied by the trial court, and it should be reversed in that respect. There was some discussion about the word any. I touched upon that in my first argument. I would just like to follow up that the word any that is in paragraph Q of the judgment of dissolution of marriage pertaining to insurance, that has been declared to be boilerplate in nature by the court in Dida v. Murphy. It's cited in the briefs where the Dida court specifically stated that if you're referring to the word any or any and all, that is not the equivalent of a specific reference to the waiver of a beneficial or expectancy interest. So, again, with all due respect to the trial court, its reliance upon the word any with respect to the insurance benefits was in error, and there has to be a strict application of the two-part test.  There was an acknowledgment before the trial court that there is no ambiguity in the judgment for dissolution of marriage. Of course, from my position representing Cheryl Winter, I don't believe that there's any ambiguity. The estate has acknowledged to the trial court there's no ambiguity. The trial court did not find an ambiguity. Even though this is a de novo review, I would encourage the court to take a look at those three different people that all have stated on the record there's no ambiguity. There is no liberal rule of contract construction that should be applied here to read into this judgment something that is not in the judgment. There was a few remarks turning to the pension about the fact that Mr. Albrecht had not notified Caterpillar with respect to the surviving spouse annuity. I would submit to the court that there is no notification. It would have made any difference. This was an asset in that the exclusive name of Cheryl Winter before the divorce, it could not be changed. That was a vested asset at the time that Mr. Albrecht set the surviving spouse annuity up before the divorce, during the divorce, after the divorce, consistent with what the trial court found. There's a reference to the fact that the trial court's decision is inconsistent between the insurance issue and the surviving spouse annuity issue, and I would also agree, I think, for consistency that Cheryl Winter should prevail on both issues. There was not a waiver of any expectancy interest, and there is certainly not a waiver of the surviving spouse annuity issue. Finally, with respect to the Principal v. Gin Tunen case, where there was no specific listing of a specific policy of life insurance, yet there was a waiver of an expectancy of beneficial interest, that case does not stand for the proposition that a specific policy does not have to be listed. It was simply not raised in that case. That issue was not discussed in the Principal mutual case, whereas other cases, including this court in the Valis-Gas case, specifically do say if two policies were specifically identified, you prevail on those. For the one that was not specifically identified, the beneficiary retains the proceeds. Counsel, do you have a question? I believe I'm done. Okay. Thank you, Your Honors. Thank you, Mr. Lawson. Mr. Heifle? Thank you. I'll be brief. I call this court's attention, well, first I would indicate that the pension benefit wasn't vested because it could have been changed at some point, and that's the whole issue of whether the waiver goes back again to the waiver, because if he had changed it and then Cheryl had believed that she was entitled to it, then that would have had to go before the court, but Douglas would have still been living, so he would have brought it instead of the estate, and it would have been the same declaratory claim involving the interpretation of the waiver language of the document. And I would indicate with respect to what constitutes adequate waiver, in the Robeson case a pension was mentioned, but there was no waiver language in the paragraph, but there was followed with a general waiver provision, which is nearly identical to the waiver provision in this case, referencing property now owned or hereafter acquired, which was found sufficient to the termination of the spouse's claim to survivorship in the pension. And the Blaschkas, in the Princeton Mutual case, there was an insurance policy, but it was not identified, but the waiver of any interest or any claim to the insurance policies was found adequate to constitute a waiver in the interest of any type, including an expectancy in the proceeds of the insurance policy. And then this Court's decision in the Blaschkas case, which involved land trust and insurance policies, there the insurance policies, certain were enumerated in certain words, but one that was omitted was not covered by the waiver. But some interesting language in the Blaschkas case, where there was a land trust that did not have its own waiver language, it had a beneficial interest, but it did have a general waiver provision later in the settlement agreement. And this Court found that sufficient to be a waiver of the expectancy or future interest in beneficial interest in the land trust. And the Court noted that the purpose of the general waiver provision was to protect both parties against contingencies that may arise in the future at some date, and that it was not a defect for the drafter to fail to express or enumerate every specific property interest that might arise, and that was the purpose of the general waiver provision, as long as the asset type was also listed. And here I think from a common scheme of the settlement document, the first is that the parties intended to include all their property interests and dispose of all interests at that time or that might arise in the future, and then each go their own separate ways without having to have any contested issues or involvement on property claims of the other in the future. I believe that's all I have, unless you have some questions. Any questions? No. Thank you. We thank both of you for your arguments this afternoon. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The court will now stand in recess until 9 o'clock tomorrow morning. Thank you.